UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)

**GUANYU LI,**
10526 Dorchester Way
Woodstock, MD 21163

    **Plaintiff, Individually and on
    Behalf of all Others Similarly Situated,**

                                                    Civil Action No.: 1:18-cv-911

**v.**

**STOCKX.com**
1046 Woodward Ave.
Detroit, MI 48226

    **Defendant.**

---

## CLASS ACTION COMPLAINT
---

Plaintiff, Guanyu Li, individually and on behalf of all others similarly situated, by and through his counsel Emejuru Law LLC, and KNA Pearl LLC, and brings forth this class action complaint against STOCKX.com, and respectfully avers as follows:

### **JURISDICTION**

1. Personal jurisdiction exists over Defendant as it does business and has the necessary minimum contacts within the State of Maryland. The Defendant has purposely availed itself of privileges of conducting activities within the State of Maryland and invokes the benefits and protection of the laws of the State of Maryland.

2. Subject matter jurisdiction exists through diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars.

3. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005).

## VENUE

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred and 28 U.S.C. § 1391(b)(3) because defendant is subject acts of business within this State are subject to the courts personal jurisdiction with respect to this action.

## PARTIES

5. Plaintiff Guanyu Li is a natural person and resident of the State of Maryland.

6. Defendant STOCKX.com is a business located in the State of Michigan and regularly conducts and transacts business within the State of Maryland.

## CLASS ALLEGATIONS

7. Plaintiff maintains that pursuant to FRCP 23, the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class; the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interest of the class.

8. This action is necessary to protect the consumer rights of Plaintiff and all others similarly situated who have been injured and continuously injured by the pertinent deceptive and negligent acts or practices committed by Defendant STOCKX.com.
9. This action is necessary and increasingly important to protect the consumer rights of Plaintiff's and all others similarly situated that participate in the global online "resell economy" in which online businesses connect people offering goods and services with other people who want to pay for them.
10. The reason for not joining all potential class members as Plaintiffs is that upon information and belief, there are thousands of potential plaintiff's making it impractical to bring them before the Court. All plaintiffs participate in the online resell economy, including that of Defendant STOCKX.com, its agents, representatives, employees, and/or servants. The deceptive and negligent actions complained of herein were taken in the line and scope of such individuals employment, agency or representation.
11. There are many persons (approximately in the thousands), both in Plaintiff's residential district and in regions surrounding Defendant who are similarly situated that have been affected and the question to be determined is one of common and general interest to many persons constituting the Class to which Plaintiff belongs and the group is so numerous as to make it impracticable to bring them all before the Court, for which reason Plaintiff initiates this litigation for all persons similarly situated pursuant to FRCP 23.

12. Upon information and belief, Defendant STOCKX.com, participates in the global online resell economy, whereby marketplace participants can sell or buy high valued and luxurious merchandise on their web platform.

13. Upon information and belief, there have been other persons in Plaintiff's residential district and in regions surrounding Defendant who are similarly situated and have purchased fake or unreal merchandise as a result of STOCKX.com's complete failure to provide proper authentication for the high valued merchandise sold on their online platform. As a result of Defendant's negligent failure to authenticate, the parties in the class were subject to fake or unreal luxury products.

14. Upon information and belief, there have been other persons in Plaintiff's residential district and in regions surrounding Defendant who are similarly situated and have purchased fake or unreal merchandise as a result of STOCKX.com's material representations that each and every item on its platform is authentic or real.

15. Specifically, class members were subject to a statement that all of the merchandise purchased on STOCKX.com is 100% authentic. Defendant STOCKX.com understands in part that all of its merchandise is not real or 100% authentic, however, intended for each class member to rely upon the false statement. As a result of the Defendants misleading representation that all of the products on its online platform were real or authentic, the parties in the class were subject to paying for fake or unreal luxury products on STOCKX.com.

16. Upon information and belief, there have been other persons in Plaintiff's residential district and in regions surrounding Defendant who are similarly situated that complained of unreal or fake products on STOCKX.com and were continuously

ignored by Defendant, its agents, representatives, servants, employees and/or brokers after the complaint was made.

17. Issues and questions of law and fact common to the members of the class predominate over questions affecting individual members and the claims of Plaintiff's are typical of the claims of the proposed class. Issues and questions of law and fact include allegations made upon information and belief of the Maryland Consumer Protection Act.

18. The maintenance of this litigation as a Class Action will be superior to the other methods of adjudication in promoting the convenient administration of justice.

19. Plaintiff Guanyu Li will fairly and adequately assert and protect the interests of the prospective class.

## **FACTUAL ALLEGATIONS FOR PLAINTIFF GUANYU LI**

20. Guanyu Li is a 30-year-old self-described steward of "hype streetwear" and owner of some of the world's most recognized "hypewear" brands.

21. In or about November 2017, Guanyu Li signed up to STOCKX.com. Mr. Li signed up for the online platform using his mobile device.

22. STOCKX.com proclaims itself as an "entirely new way of buying and selling sneakers." It operates as a marketplace that allows a purchaser to buy merchandise and a seller to sell merchandise on its platform to a potential buyer. Due to the astronomical value placed on the merchandise, STOCKX.com guarantees an authentication procedure and process for each transaction on its marketplace.

23. Relying on the authentication procedure and process from STOCKX.com, Mr. Li signed up to STOCKX.com in search of "SUPREME" brand merchandise. Mr. Li

5

thought that it would be more convenient and stress free to purchase hypewear clothing on STOCKX.com.

24. While on STOCKX.com, Mr. Li searched for various SUPREME merchandise, including a "box logo beanie."

25. Mr. Li located a SUPREME "red box logo on grey beanie" of his choice on STOCKX.com and paid for the merchandise.

26. STOCKX.com implies that every item purchased by a consumer undergoes an authentication verification process and procedure to ensure that the item is 100% authentic before shipped to a consumer. In fact, the company maintains a 100% authentic guarantee.

27. After placing his order on STOCKX.com, Mr. Li received his merchandise in or around January 2018.

28. With trust placed on STOCKX.com's 100% authentication guarantee, Mr. Li was not initially concerned about the authenticity of his box logo beanie when it arrived. However, Mr. Li later learned online of a public outcry concerning resell exchanges such as STOCK.com, which resold high demand merchandise like SUPREME, and maintained illegitimate products within its inventory.

29. Mr. Li later learned online that the SUPREME box logo beanie that he purchased online was considered one of the "riskiest" types of merchandise maintained on an online resale exchange platform.

30. As his concerns peaked, Mr. Li began comparing the SUPREME box logo beanie that he purchased on STOCKX.com with other identical SUPREME box logo beanies from previous and current years.

31. Mr. Li also consulted with very experienced SUPREME merchandise holders that aided in provided a legitimacy screening. The majority indicated that his SUPREME box logo beanie was a fake. Mr. Li was also told that his merchandise was a fake from those close to him that were also self-described loyalist to the SUPREME brand. Mr. Li also obtained pictures of similar merchandise that confirmed his suspicions.

32. Mr. Li's primary issues concerning whether his SUPREME box logo beanie was authentic, stemmed from distinct features unknown to the brand, solely exclusive to his own purchase, and unknown to other members within SUPREME community:

    a. The SUPREME red box logo on grey beanie purchased by Mr. Li was of a color that was not released in 2015 by SUPREME,

    b. Mr. Li's SUPREME red box logo on grey beanie was made with 100% cotton and not the known material made by the SUPREME brand,

    c. The SUPREME red box logo on grey beanie was purportedly released in 2016, but the color received by Mr. Li was only released in 2015, according to previous release drops from the SUPREME brand.

    d. The aesthetic feature for the name of the manufacturer, "NEW ERA," is substantially different from Mr. Li's previous and current SUPREME box logo beanies, and from others with the same purported release drop date.

33. After Mr. Li believed that his SUPREME box logo beanie was a fake, he immediately contacted STOCKX.com.

34. STOCKX.com claimed that Mr. Li's item was substantially different from the real SUPREME box logo beanie because it was from a different season. However, Mr. Li

already provided STOCKX.com with comparisons of the SUPREME beanie he purchased with authentic exclusive SUPREME merchandise released in 2016.

35. Mr. Li subsequently contacted STOCKX.com's Chief Executive Officer Josh Luber directly via Twitter. (See Exhibit 1). Mr. Li informed Mr. Luber that his SUPREME box logo beanie was not real and did not resemble a box logo beanie released by SUPREME during their 2016 season. Initially, Mr. Luber responded to Mr. Li and suggested that he did in fact have an authentic SUPREME box logo beanie. However, after Mr. Li provided Luber with ample evidence to the contrary, Mr. Luber stated that any "irregularities" should be reported directly to the company. He further stated that Mr. Li should "enjoy" his "authentic beanie."

36. After Mr. Li complained and reported the "irregularities" to STOCKX.com, the online platform immediately kicked Mr. Li off of the website.

## COUNT 1

**MARYLAND CONSUMER PROTECTION ACT**
**FRAUD/MISREPRESENTATION**
**(On behalf of Plaintiff and the Class)**

37. Plaintiff incorporates all paragraphs herein *seriatim.*

38. Defendant unlawfully violated Maryland's Consumer Protection Act which prohibits fraud/misrepresentation through commerce.

39. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

## COUNT 2

### MARYLAND CONSUMER PROTECTION ACT
### NEGLIGENT MISREPRESENTATION
### (On behalf of Plaintiff and the Class)

40. Plaintiff incorporates all paragraphs herein *seriatim.*

41. Defendant unlawfully violated Maryland's Consumer Protection Act which prohibits negligent misrepresentation through commerce.

42. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

## COUNT 3

### FRAUDULENT CONCEALMENT
### (On behalf of Plaintiff and the Class)

43. Plaintiff incorporates all paragraphs herein *seriatim.*

44. Defendant owed a duty to Plaintiff to disclose a material fact, failed to disclose the fact, intended to defraud or deceive the Plaintiff, Plaintiff took action in justifiable reliable on the concealment; and Plaintiff suffered damages as a result of the Defendants concealment.

45. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

# COUNT 4

## NEGLIGENCE
### (On behalf of Plaintiff and the Class)

46. Plaintiff incorporates all paragraphs herein *seriatim.*

47. Defendant owed a duty to Plaintiff, breached such duty to Plaintiff and caused Plaintiff harm as a result of the breach.

48. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

## PRAYER FOR RELIEF

## PLAINTIFF DEMANDS TRIAL BY JURY

Plaintiff prays that judgment be entered against Defendant STOCKX.com for all damages allowable (including statutory, actual, compensatory, nominal, and punitive) expenses, attorney's fees, that this court certify a class, and for such other and further relief as may be just and proper.

Dated this 29th of March, 2018

**EMEJURU LAW LLC**

By: */s/* Ikechukwu Emejuru
Ikechukwu Emejuru, Bar No., 19262
Emejuru Law L.L.C.
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910
Telephone: (240) 638 102786
Facsimile: 1-800-250-7923
iemejuru@emejurulaw.com

**KNA PEARL LLC**

/s/ Andrew Nyombi
Andrew Nyombi LLC
8701 Georgia Avenue
Suite 606
Silver Spring, MD 20910
Telephone: 301-585-1568
Facsimile: 1-800-250-7923
anyombi@enylaw.com

*Attorneys for Plaintiff, individually, and on behalf of all others similarly situated*