# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GUANYU LI, | * |
| Plaintiff, | * |
| v. | *     CIVIL NO. JKB-18-0911 |
| STOCKX.COM, | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM**

Guanyu Li ("Plaintiff") filed this putative class action against StockX.com ("Defendant," or "StockX"[1]), alleging violations of Maryland's Consumer Protection Act, fraud, and negligence in the operation of StockX's online marketplace. (Compl., ECF No. 2.) Defendant moved to compel arbitration and stay proceedings, or, in the alternative, to dismiss the action, under the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4 ["FAA"]. (Mot. Compel Arbitration at 1, ECF No. 7.) No hearing is required. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, Defendant's Motion will be granted in part, and the case will be stayed pending arbitration.

## I. *Background*

According to undisputed facts, StockX maintains an online marketplace allowing users to buy and sell merchandise, including athletic wear. (Compl. ¶ 22; Luber Decl. ¶ 2, Exh. in Supp. Mot. Compel, ECF No. 7-2.) Li registered for an account on StockX.com on November 2, 2017

---

[1] The Complaint styles Defendant's corporate name as "STOCKX.com," but Defendant refers to itself as "StockX LLC" or "StockX," indicating that it was "improperly named" in the Complaint. (Mot. Compel Arbitration at 1, ECF No. 7.) Neither party raised any legal objections related to the error. Plaintiff adopts Defendant's styling of the name ("StockX") in his opposition brief. (*See* Opp'n to Mot. Compel, ECF No. 8.) The Court will do the same.

(Li Decl. ¶ 3, Exh. in Opp'n to Mot. Compel, ECF No. 8-1; Luber Decl. ¶ 7), at which time he was provided with terms of service dated October 17, 2017. (Li Decl. ¶ 3 (misstating the year on the referenced document); Luber Decl. ¶ 14.) Those terms of service read in part:

> 14. <u>Disputes with StockX.</u> . . . You and StockX each agree that any and all disputes or claims that have arisen or may arise between you and StockX relating in any way to or arising out of the Terms or your use of or access to StockX's Services, shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court or tribunal located in your jurisdiction, if your claims qualify. IN ALL EVENTS, EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THESE TERMS AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.
>
> . . . e. Opt-Out Procedure. You can choose to reject this Agreement to Arbitrate ('opt-out') by mailing us a written opt-out notice ('Opt-Out Notice'). The Opt-Out Notice must be postmarked no later than 30 days after the date you accept the User Agreement for the first time. You must mail the Opt-Out notice to 1046 Woodward Ave., Detroit, MI 48226.
>
> For your convenience, we are providing an Opt-Out Notice form you must complete and mail to opt out of the Agreement to Arbitrate. You must complete the Opt-Out Notice form by providing the information called for in the form, including your name, address[,] . . . phone number and the email address(es) used to log in to the StockX account(s) to which the opt-out applies. You must sign the Opt-Out Notice for it to be effective. This procedure is the only way you can opt out of the Agreement to Arbitrate. If you opt out of the Agreement to Arbitrate, all other parts of the User Agreement will continue to apply.

(Terms of Service, Li Decl. Exh. A, ECF No. 8-4, at 8–10; Terms of Service, Luber Decl. Exh. A, ECF No. 7-3, at 10–12.) According to Li, StockX did not provide an Opt-Out Notice form when he registered, nor did it provide one by email at a later date. (Li Decl. ¶¶ 4–8.)

## II. Legal Standard

The FAA stipulates that, in any contract involving interstate commerce, a provision through which the parties agree to arbitrate their disputes shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Despite this presumption favoring alternative dispute resolution, arbitrability is at bottom a question of contract interpretation: a party cannot be required to arbitrate a dispute if he has not contractually agreed to do so. Thus, in the Fourth Circuit,

> a litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate and foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.'

*Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002). Although arbitrability is a question of federal law, applicable state contract law controls whether the parties have a valid agreement to arbitrate. *Adkins*, 303 F.3d at 501. "[G]enerally applicable state contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, state law defenses must not be applied "in a fashion that disfavors arbitration," *AT&T Mobility LLC v.*

3

*Concepcion*, 563 U.S. 333, 341 (2011), and they must not "rely on the uniqueness of an agreement to arbitrate" to invalidate it, *id.* (quoting *Perry v. Thomas*, 482 U.S. 483, 493 (1987)).

When a party moves to compel arbitration and the validity of the purported arbitration agreement between the parties is disputed, the motion is treated as one for summary judgment. *See, e.g.*, *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 347 (D. Md. 2015); *accord Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011). When evaluating a motion for summary judgment, the Court will grant judgment to a movant who "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to the current Rule 56(a)). No genuine issue of material fact exists if the opposing party fails to make a sufficient showing on an essential element of the case as to which he would bear the burden of proof. *Celotex Corp.*, 477 U.S. at 322–23. The "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The facts, and inferences drawn therefrom, must be viewed in the light most favorable to the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

## III. Analysis

As the party resisting arbitration, Li bears the burden to prove that arbitration is not appropriate in this case. *Green Tree Fin. Corp.*, 531 U.S. at 91. In evaluating his arguments, facts and inferences will be viewed in the light most favorable to him. *Scott*, 550 U.S. at 378.

The parties do not dispute three of the four *Whiteside* factors: that there is a dispute, that the transaction relates to interstate commerce,[2] and that Li, by filing suit in federal court, has

---

[2] The Fourth Circuit does not require specific evidence of the relationship to interstate commerce: "Where . . . the party seeking arbitration alleges that the transaction is within the scope of the Act, and the party opposing

4

failed to arbitrate that dispute. (Mot. Compel Mem. Supp. at 6–7, ECF No. 7-1; Opp'n to Mot. Compel at 5–6, ECF No. 8 (contesting only the existence of a valid agreement to arbitrate).) Nor does Li dispute that the Terms of Service presented to him upon registration included an arbitration provision. (Li Decl. ¶ 3 (confirming that he was presented with a copy of the terms of service); Terms of Service, ECF No. 8-4, at 8–10 (including clauses requiring arbitration).) Both parties also agree that Michigan law governs under the choice-of-law provision in the Terms of Service. (Mot. Compel Mem. Supp. at 6; Opp'n to Mot. Compel at 5.) Li's sole ground for contesting arbitration is that the agreement to arbitrate was not valid under Michigan contract law. (Opp'n to Mot. Compel at 5.)

Li makes four arguments under Michigan law to resist arbitration, all of which turn on the mechanics of the opt-out procedure[3]: first, that the arbitration agreement lacked consideration and mutuality of obligation (*id.* at 7–8); second, that StockX materially misrepresented the terms of the arbitration agreement (*id.* at 8–9); third, that the arbitration agreement is unconscionable (*id.* at 10–15); and, fourth, that the agreement to arbitrate was an "illusory contract" (*id.* at 9–10). None succeed.

Li's first argument that the arbitration provisions lacked consideration and mutuality fails as a matter of law. Under Michigan law, "whatever consideration is paid for all of the promises [in a contract] is consideration for each one." *High v. Capital Senior Living Props. 2–Heatherwood, Inc.*, 594 F. Supp. 2d 789, 799 (E.D. Mich. 2008) (quoting *Hall v. Small*, 705

---

application of the Act does not come forward with evidence to rebut jurisdiction under the federal statute, we do not read into the Act a requirement of further proof [of a nexus to interstate commerce] . . . ." *Dwyer v. Discover Fin. Servs.*, Civ. No. WMN-15-2322, 2015 WL 7754369, at *3 (D. Md. Dec. 2, 2015) (quoting *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 978 n.4 (4th Cir. 1985)).

[3] Plaintiff advised the Court on October 15, 2018, that StockX updated its terms of service as of October 9, 2018, removing the reference to a specific, required Opt-Out Notice form and permitting registrants to opt out by sending certain information to StockX. (Misc. Correspondence to the Court, ECF No. 18.) Because the question currently before the Court is whether or not Li and StockX had an agreement to arbitrate under the Terms of Service dated October 17, 2017, this recent amendment does not affect the analysis.

N.W.2d 741, 744 (Mich. Ct. App. 2005) (per curiam)). An arbitration clause need not be supported by "separate mutuality of consideration apart from the consideration supporting the rest of the contract." *Id.* (citing *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th Cir. 1989)).[4] Notwithstanding those general principles, Li argues that the arbitration clause in this case lacked mutuality because StockX failed to fulfill a necessary condition precedent—the provision of the Opt-Out form. Under Michigan law, there is a presumption against finding a term to be a condition precedent unless "compelled by the language of the contract plainly expressed." *MacDonald v. Perry*, 70 N.W.2d 721, 725 (Mich. 1955); *accord Real Estate One v. Heller*, 724 N.W.2d 738, 741 (Mich. Ct. App. 2006). No language in the contract suggests that providing the Opt-Out Notice form was a condition precedent to the arbitration agreement. Rather, the Terms of Service indicate that the form would be provided as a matter of "convenience." (Terms of Service, ECF No. 8-4, at 10.) Therefore, the provision of the form was not a condition precedent, and the agreement to arbitrate was sufficiently mutual and supported by adequate consideration as a matter of law.

Second, Li argues that the arbitration clause is void under the doctrine of material misrepresentation, because StockX misrepresented that an Opt-Out Notice form would be provided to him. Both intentional and innocent misrepresentation defenses under Michigan law require that the party asserting the defense "acted in reliance upon" the misrepresentation. *See Arim v. Gen. Motors Corp.*, 520 N.W.2d 695, 702 (Mich. Ct. App. 1994) (per curiam) (requiring reliance for a defense of intentional misrepresentation); *U.S. Fid. & Guar. Co. v. Black*, 313 N.W.2d 77, 84 (Mich. 1981) (same for innocent misrepresentation). Li provides no evidence that he relied on the existence of an Opt-Out Notice form when entering the agreement—Li's

---

[4] That general principle applies to uphold even arbitration agreements allowing one party the exclusive power to elect arbitration, *Wilson Elec. Contractors*, 878 F.2d at 169, which is not the case here. (*See* Terms of Service, ECF No. 8-4, at 8 (obligating both parties to arbitrate all disputes).)

declaration acknowledges only that an opt out procedure existed, but he does not claim to have read the clause or even to have been aware of it when registering. (*See* Li Decl. ¶ 4 (stating only that, "[a]pparently, the Terms of Service included an 'OPT OUT' Procedure.").) Therefore, Li failed to meet his burden on an essential element of a misrepresentation defense.

Third, Li argues that the arbitration agreement is unconscionable. Under Michigan law, the defense of unconscionability requires both procedural and substantive unconscionability. *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471, 474 (Mich. Ct. App. 2005). Li argues that the clause is unconscionable because it is included in an adhesion contract and because StockX never provided the Opt-Out form. If StockX's failure to provide the form made it impossible to opt out of arbitration such that Li had "no realistic alternative to acceptance of the term," the arbitration provision might be considered procedurally unconscionable under Michigan law. *Id.* However, even if so, Michigan courts "will not invalidate adhesion contracts as a matter of law as long as the challenged provision is [substantively] reasonable." *Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208, 226 (Mich. Ct. App. 1999). As a matter of law, Michigan courts hold arbitration agreements to be substantively reasonable provided they do not mandate a waiver of statutory rights and provided the arbitration process is procedurally fair. *Id.*; *see also Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087, 1103 (W.D. Mich. 2000). Li has failed to point to any aspects of the arbitral forum under the challenged clause that would be procedurally unfair or to any impact on his statutory rights. Thus, Li failed to carry his burden of showing that the arbitration agreement is substantively unreasonable.

In his final argument, Li contends that the arbitration agreement was illusory. Under Michigan law, an agreement to arbitrate may be illusory if it "allows one party the unfettered right to alter the arbitration agreement's existence or its scope." *Tobel v. AXA Equitable Life Ins.*

7

*Co.*, Civ. No. 298129, 2012 WL 555801, at *4–5 (Mich. Ct. App. Feb. 21, 2012) (quoting *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2012)). Li appears to argue that the arbitration agreement was illusory in practice because StockX required the use of a particular Opt-Out Notice form, it was in StockX's exclusive power to provide that form, and, simply by failing to provide it, StockX could unilaterally amend the arbitration agreement by rendering it impossible to opt out.[5] (Opp'n to Mot. Compel at 9–10.) Indeed, the arbitration provision expressly states that the *only* way to opt out of the agreement is to complete a specific form, a form which the Defendant never claims to have provided. (Terms of Service, ECF No. 8-4, at 10 ("You must complete the Opt-Out Notice form . . . . This procedure is the only way you can opt out of the Agreement to Arbitrate.").) At root, this is an argument that the Defendant breached its obligations under the arbitration provision by failing to provide Li with the Opt-Out Notice form and, because of that breach, Li should be excused from performance under that same provision. Li's argument would be stronger if, for example, he provided evidence that he contacted StockX to request a form and was ignored, or that he submitted his own version of an opt-out form and had it rejected; however, he puts forward no evidence to that effect. Under the facts provided, it is not abundantly clear that it would have been impossible *in fact* to opt out. However, Li need only raise a genuine dispute of material fact. Li points out that Defendant has not produced the Opt-Out Notice form referenced in the terms, raising doubt as to whether such a form exists. (Opp'n to Mot. Compel at 6.) Li also provided a declaration from his counsel, suggesting that the failure to provide an Opt-Out form upon registration was not a one-time glitch unique to Li's experience, but may have been a recurrent feature of StockX's registration

---

[5] The Terms of Service also include a clause that provides StockX the right to unilaterally amend the arbitration agreement prospectively, if it provides thirty days' notice and an additional opportunity to opt out. (*See* Terms of Service, ECF No. 8-4, at 8–9 (marked as ¶ 14f).) However, Li does not challenge that clause, and, therefore, the Court does not address it.

8

process under the October 2017 terms. (Emejuru Decl. ¶¶ 3, 6–7, Exh. in Opp'n to Mot. Compel, ECF No. 8-5.) Such a suggestion is troubling.

However, even considering all these facts in the light most favorable to plaintiff, Li's argument still fails as a matter of law. Even assuming StockX's conduct in failing to provide the form constituted a material breach of the arbitration provision under Michigan law, Li's continued performance under the contract without any protest at the time of the breach waived his right to refuse to perform on those grounds. In *Schnepf v. Thomas L. McNamara, Inc.*, the Michigan Supreme Court held that, where one party unilaterally amended the location of performance under the contract, the opposing party's failure to object at the time of breach waived its right to refuse to perform later:

> 'It was [the non-breaching party's] duty, when it discovered the apparent breach of the contract, if it intended to insist upon [] forfeiture, to do so at once. By permitting [the breaching party] to proceed with the performance of the contract[,] it waived a breach [on that ground].' . . . 'Where there has been a material breach which does not indicate an intention to repudiate the remainder of the contract, . . . [a]ny act indicating an intent [by the injured party] to continue will operate as a conclusive election . . . depriving him of any excuse for ceasing performance on his own part.'

*Schnepf*, 93 N.W.2d 230, 232 (Mich. 1958) (internal citations omitted) (first quoting *Grayson-McLeod Lumber Co. v. Slack-Kress Tie & Stave Co.*, 143 S.W. 581, 583 (Ark. 1912); then quoting *Sinclair Refining Co. v. Costin*, 116 S.W.2d 894, 898 (Tex. Ct. Civ. App. 1938)); *accord Midfield Concession Enters., Inc. v. Areas USA Inc.*, 130 F. Supp. 3d 1122, 1132–33 (E.D. Mich. 2015). Li offered no evidence suggesting that he objected to StockX's failure to provide the Opt-Out form at any time prior to this litigation. According to his own statements, it appears that he continued to use StockX's services after the 30-day opt-out period expired, despite never having received an Opt-Out Notice form. (*Compare* Compl. ¶ 27 (alleging that he received the allegedly fraudulent merchandise in or around January 2018), *with* Li Decl. ¶ 4 (stating that he

registered and was provided with the Terms of Service, including the 30-day opt-out provision, on November 2, 2017).) Therefore, under Michigan law, even if the Defendant's failure to provide the form constituted a material breach of the arbitration provision such that Li might have been excused from his own obligation to arbitrate, his failure to object or assert his rights at the time of the breach waived any right to do so later.

In a supplemental filing, Li provided an additional citation to *Whitten v. Apria Healthcare Group, Inc.*, as support for his argument that his declaration provides sufficient evidence to defeat the motion to compel. (Suppl. in Opp'n at 1–2, ECF No. 9.) In *Whitten*, the plaintiff challenged whether she had ever agreed to—or even been presented with—a contract to arbitrate disputes with her employer. Civ. No. PWG-14-3193, 2015 WL 2227928, at *4 (D. Md. May 11, 2015). *Whitten*, though clearly correct on *its* facts, is distinguishable from this case, and Plaintiff misreads its treatment of the evidence. The plaintiff's affidavit in *Whitten* contested the authenticity of records suggesting that the employer's online learning program incorporated an agreement to arbitrate at the time she completed it. *Id.* Far from "accept[ing] the Plaintiff's wholesale argument that she did not bind herself to an arbitration agreement simply through sworn affidavit" (Suppl. in Opp'n at 2), the court in *Whitten* determined that the affidavit called the credibility of defendant's evidence into doubt. *Whitten*, 2015 WL 2227928, at *4 (highlighting questions about the authenticity and reliability of screenshots and other evidence defendant offered to prove the existence of an arbitration agreement and plaintiff's assent to it). On that basis, the court found that the plaintiff created a genuine dispute on a material fact: whether an agreement to arbitrate ever existed between the plaintiff and her employer. *Id.* Unlike the plaintiff in *Whitten*, Li does not argue that he never assented to the Terms of Service when creating his account. Nor does he dispute that the Terms of Service applicable at that time

included an arbitration agreement. All of his arguments turn on the Opt-Out Notice form. Unlike the plaintiff's affidavit in *Whitten*, and for the reasons explained above, Li's declaration—and any other evidence he provides—fails to carry his burden to raise a genuine factual dispute on a material question under any of his theories of relief.

The final question before the Court is whether to grant a stay pending arbitration or to dismiss the case. (Mot. Compel Mem. Supp. at 5 n.2 (indicating a preference for a stay); Opp'n to Mot. Compel at 15 (arguing for dismissal)). The Fourth Circuit has suggested on occasion that dismissal may be appropriate where all issues within a lawsuit are subject to arbitration. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (referring to the possibility of dismissal in dicta). More recently, however, the Fourth Circuit noted tension between *Choice Hotels* and other cases holding that "the FAA commands the federal courts to stay ongoing judicial proceedings" once it is determined that the FAA "covers the matter in dispute." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 605 n.2 (4th Cir. 2013) (quoting *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999)); *see also Adkins*, 303 F.3d at 500 (declaring that "[the] stay-of-litigation provision [under § 3] is mandatory"). The Fourth Circuit acknowledged the existence of a circuit split on the question but, to date, has declined to adopt a definitive position on it. *Noohi*, 708 F.3d at 605 n.2; *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012). In light of these precedents, although either disposition might be justified, the Court will issue a stay, rather than dismissing the case.

## IV. Conclusion

For the foregoing reasons, an Order shall enter granting Defendant's motion to the extent that it seeks to compel arbitration and stay proceedings pending arbitration of the dispute. In

light of that decision, Defendant's motion shall be denied in part to the extent that it seeks the alternative relief of dismissal.

DATED this 17th day of October, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge